**Manuel RODRIGUEZ, et al.,
Plaintiffs, Appellees,**

v.

**EASTERN AIR LINES, INC.,
Defendant, Appellant.**

**No. 86–1633.**

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1987.

Decided April 15, 1987.

Francisco Ponsa-Flores with whom Francisco Ponsa-Feliu, Edda Ponsa-Flores, and Lawrence E. Duffy, San Juan, P.R., were on brief, for defendant, appellant.

Enrique Figueroa-Llinas with whom Carlos Bobonis-Gonzalez, Santurce, P.R., was on brief, for plaintiffs, appellees.

Before COFFIN, Circuit Judge,
WISDOM,* Senior Circuit Judge, and
BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

Appellant Eastern Air Lines, Inc. (Eastern) appeals a judgment requiring it to calculate seniority for its employees in Puerto Rico in accordance with the Com-

* Of the Fifth Circuit, sitting by designation.

monwealth's wrongful discharge statute, Act. No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185a–*l* (1985) ("Law 80"). Such an approach differs from that used in determining the seniority of all its other employees. We conclude that the only remedy available under the statute is severance pay in the event of a wrongful firing, and we therefore reverse.

## I.

Plaintiffs Manuel Rodriguez, Herminio Romero and Ramon Abreu are all non-union employees of defendant Eastern Airlines. Rodriguez began working for Eastern on April 22, 1960, and presently serves as a customer service agent at Luis Munoz Marin International Airport in San Juan. Herminio Romero was hired by Eastern on February 13, 1967 and now works as a customer service agent at John F. Kennedy Airport (JFK) in New York.[1] Ramon Abreu began work for Caribbean Atlantic Airlines (Caribair) on February 27, 1967, and became an Eastern employee on December 3, 1973 following a corporate merger between Caribair and Eastern. Abreu also works at JFK as a customer service agent.

Layoff procedures for non-union, non-management employees such as these three are specified in Eastern's Policy Guide for Non-Contract Employees (the Policy Guide) and in a Standard Practice memorandum. According to the Standard Practice memorandum, when layoffs become necessary, employment positions are declared "surplus" on a local basis. Under the Policy Guide, the order in which employees are placed on surplus status is determined on the basis of the employees' "work classification" seniority, which is the amount of time an employee has spent in a particular occupational group.[2] As an alternative to being laid off, a fulltime agent placed on surplus status who has more than three years work classification seniority or seven years company seniority may choose, *inter alia*, to displace an employee in the same position at any location in the Eastern system, based on his or her work classification seniority.

On August 12, 1983, Eastern notified plaintiffs Romero and Abreu that they would be placed on surplus status at the Puerto Rico airport effective August 31. To avoid layoff, the two chose to displace junior employees in their job positions at New York's JFK Airport. Both plaintiffs signed the documents authorizing this transfer "under protest, pending court decision on Law 80."

On August 17, they, along with Rodriguez,[3] filed an action for declaratory judgment in the Superior Court of Puerto Rico, arguing that the airline's seniority policy violates Law 80. They claimed that the law requires employers to calculate seniority on the basis of total active service with the employer and not—as Eastern had done—on the basis of employment within a job classification. Each plaintiff would be entitled to greater seniority under a total work time calculation than under Eastern's work classification method of determining seniority. The plaintiffs sought a declaration that Eastern's policy violates Law 80, and they asked that the court order Eastern to comply with the provisions of Law 80 and to refrain from transferring plaintiffs out of Puerto Rico. The case subsequently was removed to federal court where, after a hearing and the court's receipt of additional information, plaintiffs were awarded summary judgment, 637 F.Supp. 536.

## II.

1. In its reply brief, Eastern contends that plaintiffs Romero and Abreu are presently working in San Juan, and have been for some time. These plaintiffs' current work location is irrelevant to our disposition of the case and so, for convenience and without further inquiry, we have used in our factual summary the work location specified in the district court's opinion.

2. An occupational group may contain several positions, and "position seniority" is also used for certain purposes.

3. Rodriguez has not been placed on surplus status, but apparently joined this lawsuit because he may at some time be subject to a layoff.

Eastern argues, *inter alia*,[4] that the only relief available under Law 80 is severance pay in the event of a discharge and that the district court therefore lacked authority to order the company to change its seniority system. In a related argument, they contend that these plaintiffs have no cause of action under Law 80 because they have not been fired from their jobs. Section 1 of Law 80, P.R. Laws Ann. tit. 29, § 185a, provides:

> Every employee in commerce, industry or any other business or place of employment designated hereinafter as the establishment, in which he works for compensation of any kind, under contract without a fixed time, who is discharged from his employment without good cause shall be entitled to receive from his employer, in addition to the salary he may have earned:
>
> (a) the salary corresponding to one month as indemnity;
>
> (b) an additional progressive indemnity equivalent to one week for each year of service.
>
> The years of service shall be determined on the basis of all the accumulated preceding periods of work which the employee has worked for the employer prior to his discharge, but excluding those which by reason of a previous discharge or severance, have been compensated or have been the object of a judicial adjudication.

Section 2, P.R.Laws Ann. tit. 29, § 185b, specifies the reasons that constitute "good cause" for discharge. Section 3, P.R.Laws Ann. tit. 29, § 185c, addresses seniority and provides, in relevant part:

> In any case where employees are discharged for the reasons indicated in subsections (d), (e) and (f) of the preceding section, it shall be the duty of the employer to retain with preference in the job those employees of greater seniority provided there are positions vacant or filled by employees of less seniority in the employment within their occupational classification which may be held by them....

The district court observed that section 3 of Law 80, P.R.Laws Ann. tit. 29, § 185c, imposed a duty on employers "to retain employees with greater seniority when layoffs become necessary for business or economic reasons," *Rodriguez v. Eastern Air Lines*, 637 F.Supp. 536, 541 (D.P.R.1986), and it relied on agency guidelines to conclude that seniority under Law 80 was to be calculated on the basis of company tenure rather than on job classification tenure. *Id.* at 540. *See* Guidelines for the Interpretation and Application of Law 80 of the Department of Labor and Human Resources. The court then reasoned that if Law 80 imposes a duty to make layoffs based on total job tenure, an employee has an independent right under section 3 to challenge a seniority policy that represents a breach of this duty. In response to Eastern's argument that severance pay is the exclusive remedy in a Law 80 case, the court stated that such an argument applied only to a Law 80 claim for wrongful discharge and was irrelevant to a Law 80 challenge to an employer's seniority policy. 637 F.Supp. at 542.

The district court drew support for its conclusion from a Puerto Rico Supreme Court case, *Coca-Cola Bottling Co. v. Union De Tronquistas*, 9 P.R. Supreme Court Official Translations 1123, 109 D.P.R. 834 (1980). The *Coca-Cola* case arose out of a dispute between the union and the company over whether a superseniority clause in a collective bargaining agreement should prevail over Law 80, section 3. Because the Supreme Court of Puerto Rico addressed that issue in an action for declaratory relief, and without mention of any discharge, the district court was persuaded that sections 2 and 3 of Law 80 create an independent right even in the absence of a discharge—and thus authorize a remedy other than severance pay.

■ We disagree with the district court's view of the *Coca-Cola* case, and we think it

---

**4.** Although Eastern raises a number of points on appeal, we discuss only two because we conclude that they are dispositive.

is clear from the language and legislative history of Law 80, as well as from a prior Puerto Rico Supreme Court case, that the plaintiffs in this case may not require Eastern to change the method by which the company calculates seniority. We shall consider the statute and prior case law before turning to our contrary view of the *Coca-Cola* decision because we think the *Coca-Cola* case must be viewed in the context of those other factors.

We look first to the statutory language. Law 80 unequivocally states that it applies to "[e]very employee" "who is discharged from his employment without good cause" and, in the same sentence, assures such an employee a progressive amount of severance pay depending upon the number of years of service. Section 2 defines "good cause," and section 3 further elaborates on good cause by imposing a duty on the employer to make certain kinds of "good cause" discharges so as to preserve seniority rights. The explicit remedy in this statutory scheme is the severance pay; there is no suggestion that a wrongfully discharged employee may claim reinstatement. Nor is there any indication that an employee who has not been discharged can prevent his or her employer from making a wrongful discharge by, for example, forcing compliance with a certain seniority scheme.

The "Statement of Motives" contained in the enacting legislation for Law 80, which departed from prior law by increasing the amount of compensation for wrongfully discharged employees,[5] also appears to limit the law's reach to requiring severance pay when an employee is discharged without good cause. According to the Statement:

> The purpose of this act is to guarantee that employees discharged without good cause be entitled to receive from their employer a one-month salary compensation plus an additional progressive indemnity equivalent to at least a one-week salary for each year of service.

5. Prior law provided employees discharged without good cause only one month's salary as

Act No. 80 of May 30, 1976. The Statement asserts the right of Puerto Rican workers to more effective protection for their employment through a law "which affords more just remedies commensurate with the damages caused by an unjustified discharge and at the same time discourages the incidence of this sort of discharge." *Id.*

A joint report issued by the Senate Standing Committees on Labor and Civil Rights put forth similar goals for Law 80, stating that the act was intended to increase protection for dismissed workers, "to establish the progressive indemnity for unjustified dismissals, and to limit even *more* the concept of just cause. Seventh Legislature, Senate, April 23, 1975." *Secretary of Labor v. I.T.T. Western Hemisphere Directories*, 8 P.R. Supreme Court Official Translations 564, 567, 108 D.P.R. 536 (1979) (emphasis in original). In addition, in 1959, when the Civil Rights Commission of Puerto Rico recommended revision of Law 80's predecessor, Act No. 50 of 1949, severance pay was the only remedy considered for a wrongful discharge:

> "The government should control the determination of just cause in order to reduce the possibility of arbitrariness without unreasonably limiting the employer's freedom of choice and, in the absence of reasonable cause, the dismissals should be subject to a higher compensation."

8 P.R. Supreme Court Official Translations at 566.

Finally, the Guidelines for the Interpretation and Application of Law No. 80 issued by the Department of Labor and Human Resources of Puerto Rico specify the remedies under Law 80 as one month's pay plus one week's salary for each year of service. The Guidelines then state that "the remedy which is granted to the worker by Law No. 80 is an exclusive one, and non[e] other."

The Supreme Court of Puerto Rico also has stated explicitly that an employer who suspends an employee from work without cause "is merely under the obligation of

compensation.

paying, in addition to the salary the employee would have earned, one month's salary as indemnity.[6] ... Not even the remedy of reinstatement is available in these cases." *Rivera v. Security National Life Insurance Co.*, 6 P.R. Supreme Court Official Translations 727, 738, 106 D.P.R. 517 (1977). *See also Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036, 1039–40 (D.P.R. 1985) (citing *Rivera*).

Thus, Law 80 on its face and as construed by relevant authorities is limited in its remedial scope. Particularly in light of the express holding in *Rivera* that Law 80 does not provide for the remedy of reinstatement, we conclude that the Supreme Court of Puerto Rico would not find within the statute a cause of action to force an employer to modify a seniority system so as to prevent an employee's discharge. Although Law 80 obviously is designed to assist those injured by arbitrary discharge practices, there is every indication from its language and other sources that the legislature intended to avoid direct interference with the employer's business operation. *See Vargas*, 604 F.Supp. at 1039 ("[T]his legislation sought to strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment."). Law 80 apparently was passed with the hope that increasing the penalty would discourage unjustified discharges, but an employer willing to pay the price is free to discharge whomever he or she pleases.

We do not understand the *Coca-Cola* case to represent a departure from these other authorities. As the district court recognized, the facts in the *Coca-Cola* case are "sketchy." All we know is that a dispute over the relative significance of a superseniority clause had been submitted to arbitration and that the arbitration award concluded that the clause would take precedence over the provisions of Law 80. The Supreme Court of Puerto Rico had no facts before it about the underlying dispute. 9 P.R. Supreme Court Official Translations

at 1127. Accordingly, we think it ill-advised to draw broad conclusions from this opinion about the operation of Law 80—particularly when the statute's explicit language and all authorities so clearly limit the law's reach. We certainly find nothing in the *Coca-Cola* opinion suggesting that an employee would have a cause of action under Law 80 for the purpose of requiring his or her employer to determine seniority in accordance with Law 80. We read this opinion as saying no more than that when a discharge *does* occur, there is no violation of Law 80 if the layoffs are done in accordance with a superseniority clause.

■ Thus, at most, the *Coca-Cola* case suggests that an employee may seek declaratory relief to determine whether his or her discharge would violate Law 80 and whether he or she would be entitled to severance pay. We suspect, however, that even this possible holding is beyond what the Puerto Rico Supreme Court intended. The Court noted in its opinion that "[i]n certain specific circumstances there exists the remedy of a declaratory judgment to elucidate controversies regarding the interpretation of a bargaining agreement." 9 P.R. Supreme Court Official Translations at 1128. In the absence of a collective bargaining agreement and prior arbitration decision, we question whether the Supreme Court of Puerto Rico would authorize the exercise of jurisdiction to decide the hypothetical question of whether an employee discharged in the future would be entitled to the benefits of Law 80. Regardless, the plaintiffs here lack standing to bring such an action because they face no risk of discharge. As participants in Eastern's Variable Earnings Program, plaintiffs are guaranteed continued employment until normal retirement. *See* Affidavit of Ken Burch, paragraph 6. *See also* Policy Guide at 60, paragraph XV(F); Standard Practice 50–303, paragraph (B)(3). Thus, plaintiffs

---

6. The Court observed in a footnote that the remedy actually had been extended to add one week's pay for each year of service. *Rivera v.*

*Security National Life Insurance Co.*, 6 P.R. Supreme Court Official Translations 727, 738 n. 3, 106 D.P.R. 517 (1977).

here do not have a cause of action even for the declaratory relief they sought.[7]

### III.

In light of the foregoing discussion, we conclude that the district court erred in ruling that Eastern's method of determining plaintiffs' seniority violates Law 80 and in ordering the airline to calculate plaintiffs' seniority in accordance with the statute. Because severance pay is the only remedy available under Law 80, and because plaintiffs have not been discharged from employment with Eastern, Law 80 simply does not apply to them.[8]

*The judgment of the district court is therefore reversed, and the case is remanded with instructions that the complaint be dismissed.*

---

7. Of course, if plaintiffs at some time are placed on surplus status and choose not to exercise their rights to bump employees with less seniority elsewhere in the Eastern system, they may have a cause of action under Law 80 for severance pay. We intimate no view, however, on whether Law 80, in fact, applies when an employee turns down an option of other employment.

8. We see no need to decide whether Eastern's seniority policy does, in fact, violate Law 80. That issue need not be resolved until a discharged Eastern employee seeks severance pay under the statute.