**BAYAMON CAN COMPANY, INC.,**
Plaintiff, Appellee,

v.

**CONGRESO de UNIONES INDUSTR-**
**IALES de PUERTO RICO,**
Defendant, Appellant.

No. 87–1817.

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1988.

Decided April 5, 1988.

* Of the District of Massachusetts, sitting by desig-

Nicolás Delgado Figueroa, Santurce, P.R., on brief for defendant, appellant.

Luis D. Ortíz Abreu with whom Goldman & Antonetti, Santurce, P.R., was on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

This case presents the recurring problem of a district court substituting its own judgment for that of an arbitrator in the interpretation of a collective bargaining contract, a practice which is normally proscribed. *United Paperworkers Int'l Union v. Misco, Inc.*, —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We reverse.

The Congreso de Uniones Industriales de Puerto Rico (Union), the certified bargaining agent for the production and maintenance employees of Bayamón Can Company (Company), entered into a collective bar-

nation.

gaining agreement with the Company providing for mandatory and definitive arbitration of "grievances, controversies or misunderstandings [that] arise in the course of work" regarding "a claim made by one of the parties [to the] agreement or by one or more employees that the other party is violating this agreement." The contract also provides that the Company shall pay an hourly shift differential "to all those employees required to work the second shift," which shift differential "shall only be applicable when the employee begins to work during the second shift." It is further stated that "the first shift shall consist of the first eight working hours of the employee [while] the second shift shall consist of the second eight working hours of the employee."

When the contract entered into effect, the Company had a working schedule of two shifts, one commencing at 6:00 AM and ending at 3:00 PM, and the second from 3:00 PM to 11:00 PM. A shift differential was paid to those working the second shift. Thereafter a new schedule was put into effect whereby the second shift commenced at 10:00 AM and ended at 7:00 PM, thus overlapping the first shift during the second shift's first five hours. The Company refused to pay a shift differential except for the hours worked after 3:00 PM (*i.e.,* the non-overlapping hours). As a result, the Unión filed a grievance claiming the right to the shift differential for the entire second shift. The grievance was eventually heard before an arbitrator.

The arbitrator, in a less than articulate decision, ruled that the employees were entitled to be paid the shift differential for all the time worked during the new second shift. This decision was challenged by the Company by the filing of a suit in district court seeking vacation of the award, alleging that the decision was beyond the arbitrator's power because it constituted an alteration, modification, amendment or addition to the contract, all of which were prohibited by the agreement. The district court agreed with the Company and granted summary judgment vacating the award.

The rules regarding the limited authority of courts to intervene in the merits of labor arbitration awards are well-established in decisions of the Supreme Court, *United Steel Workers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) ("The function of the court is very limited ... [i]t is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."), and of this circuit, *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1049 (1st Cir. 1977) ("[J]ust because a court would interpret the contract differently from the arbitrator does not provide a basis for overruling him."). The Court has recently reminded us of the essence of this proscription:

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract....
>
> ... Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claim of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision ...

*Misco, Inc., supra,* 108 S.Ct. at 370–71.

As previously indicated, the award in this case is hardly a model of erudition. But then again this is not atypical of the kind of informal proceeding the parties bargain for when they agree to labor arbitration. Further, we might go so far as to accept, *arguendo,* that were we to have ruled on these issues in the first instance, we might have interpreted the agreement as proposed by the Company rather than as decided by the arbitrator. However, that is

irrelevant because we are unable to accept the premise that the arbitrator's award of the shift differential for the entire new second shift is not *arguably* within the language of the previously cited contract clauses. The proof of the pudding is in the Company's own actions. *It* decided to pay a shift differential for some part of the second shift, *i.e.*, the non-overlapping work time of that shift. Nothing in the agreement establishes that a differential is payable to only parts of a second shift but is inapplicable to the overlapping periods of the same shift. In the normal course of business decisions, we cannot assume that the Company's action was uninformed. Rather this concession is an admission of ambiguity in the contract's language, a classical case for allowing an arbitrator freedom of interpretation. In light of the ambiguous contract language and the company's actions, therefore, the arbitrator was *arguably* construing the agreement in extending the differential to the entire shift. This is not a case where he has exercised "his own brand of industrial justice." *Enterprise Wheel & Car Corp., supra*, 363 U.S. at 597, 80 S.Ct. at 1361.

The district court lacked jurisdiction to enter into the merits of this controversy.

*Reversed.*